## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>CENTRAL GROCERS, INC., *et al.*,<br><br>　　　　Debtors. | Chapter 7<br><br>Case No. 17-13886<br>(Jointly Administered)<br><br>Hon. Pamela S. Hollis |
| HOWARD B.SAMUELS, solely as chapter 7 trustee of the estates of CENTRAL GROCERS, INC, *et al.*,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAMES J. CASACCIO, THOMAS J. CASACCIO, LEAMINGTON FOODS, INC., CASACCIO BROTHERS, INC., MARKET FRESH, INC., and MARKET FRESH NORTH, INC.<br><br>　　　　Defendants. | Adversary No. 18-00734 |

## <u>NOTICE OF FILING</u>

PLEASE TAKE NOTICE that we have this 10th day of May 2019 filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, ***Defendants' Answer to Complaint and Affirmative Defenses***, a true and correct copy of which is hereby served upon you.

Respectfully submitted,

LEAMINGTON FOODS, INC. and
CASACCIO BROTHERS, INC.

By:　　/s/ John A. Lipinsky　　　　　　　
　　　　One of their attorneys

John A. Lipinsky
Clingen Callow & McLean
2300 Cabot Drive, Suite 500
Lisle, Illinois 60532
(630) 871-2600
lipinsky@ccmlawyer.com

{00465032.DOCX /v. 1 }

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that she caused copies of the ***Defendants' Answer to Complaint and Affirmative Defenses,*** to be served to the parties below by electronic filing on this 10th day of  May, 2019.

By: */s/ Susan Haugh*

Leo Oppenheimer
Reid Collins Tsai LLP
1601 Elm St., Ste. 4250
Dallas, TX 75201
(214)420-8900
Email: loppenheimer@rctlegal.com

Mark D. Roth
Roth Fioretti LLC
311 S. Wacker
STE 2470
Chicago, IL 60606
312 922-6262
Fax : 312 922-7747
Email: markdroth@gmail.com

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 7 |
| CENTRAL GROCERS, INC., *et al.*, | Case No. 17-13886 |
| | (Jointly Administered) |
| Debtors. | Hon. Pamela S. Hollis |
| HOWARD B.SAMUELS, solely as chapter 7 trustee of the estates of CENTRAL GROCERS, INC, *et al.*, | |
| Plaintiff, | Adversary No. 18-00734 |
| v. | |
| JAMES J. CASACCIO, THOMAS J. CASACCIO, LEAMINGTON FOODS, INC., CASACCIO BROTHERS, INC., MARKET FRESH, INC., and MARKET FRESH NORTH, INC. | |
| Defendants. | |

## DEFENDANTS' ANSWER TO COMPLAINT
## AND AFFIRMATIVE DEFENSES

Defendants, LEAMINGTON FOODS, INC. and CASACCIO BROTHERS, INC.

(collectively referred to herein as "Defendants") by and through their attorneys, Clingen Callow

& McLean, LLC, answer Plaintiff's Complaint as follows:

## JURISDICTION AND VENUE

1.      This adversary proceeding relates to the above-captioned bankruptcy case (the "Bankruptcy Case"), which was commenced on May 2, 2017 (the "Petition Date") under title 11 of the United States Code (the "Bankruptcy Code").

**ANSWER:      Defendants admit the allegations contained in paragraph 1.**

2.      This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b), as well as Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), (E), (F), (H), and (O).

**ANSWER: Defendants admit the allegations contained in paragraph 2.**

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**ANSWER: Defendants admit the allegations contained in paragraph 3.**

4.      Pursuant to Rule 9015-1 of the Local Rules of Bankruptcy Practice and Procedure for this Court, the Trustee states that he consents to the entry of a final order or judgment by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution with respect to any of the requests for relief set forth in this Complaint.

**ANSWER: Defendants do not consent to the entry of a final order of judgment by this**

**Court. Defendant denies any remaining allegations.**

## PARTIES

5.      Plaintiff HOWARD B. SAMUELS is the Chapter 7 trustee (the "Trustee") for the bankruptcy estates of Central Grocers, Inc. ("CGI"), Strack and Van Til Super Market, Inc. ("Strack"), and SVT,LLC (together with Strack, "SVT").

**ANSWER: Defendants admit the allegations contained in paragraph 5.**

6.      Defendant JAMES J. CASACCIO ("James Casaccio") is an individual residing at 613 S. Ardmore Ave., Addison, Illinois 60101.

**ANSWER: The allegations contained in paragraph 6 are not directed to these Defendants.**

**Defendants lack sufficient knowledge to either admit or deny the allegations contained in**

**paragraph 6 of the Complaint and therefore deny same.**

7.      Defendant THOMAS J. CASACCIO ("Tom Casaccio") is an individual residing at 613 S. Ardmore Ave., Addison, Illinois 60101.

**ANSWER: The allegations contained in paragraph 7 are not directed to these Defendants.**

**Defendants lack sufficient knowledge to either admit or deny the allegations contained in**

**paragraph 6 of the Complaint and therefore deny same.**

8.    Defendant LEAMINGTON FOODS, INC. ("Leamington") is an Illinois Corporation with its principal place of business at 500 N. Mannheim Rd., Hillside, IL 60162. Leamington may be served with process through its registered agent, Kenneth A Casaccio, at 5467 W. Madison, Chicago, IL 60644.

**ANSWER:    LEAMINGTON FOODS, INC. denies the allegations contained in paragraph 8.**

9.    Defendant LEAMINGTON FOODS – ROOSEVELT ("Roosevelt") is a store owned and operated by Leamington and is located at 3240 W. Roosevelt, Chicago, IL 60624.

**ANSWER:    Defendants admit the allegations contained in paragraph 9.**

10.    Defendant CASACCIO BROTHERS, INC. D/B/A LEAMINGTON FOODS ("Brothers") is an Illinois Corporation with its principal place of business at 5467 W. Madison, Chicago, IL 60162.  Brothers may be served with process through its registered agent, Kenneth A. Casaccio, at 5467 W. Madison, Chicago, IL 60644.

**ANSWER:    Defendant CASACCIO BROTHERS, INC. admits the first sentence and denies the allegations in the second sentence of paragraph 10.**

11.    Defendant MARKET FRESH, INC. D/B/A MARKET FRESH FINER FOODS ("Market Fresh") is an Illinois Corporation with its principal place of business at 800 N. Kedzie Ave, Chicago, IL 60651. Market Fresh may be served with process through its registered agent, James J Casaccio, at 800 N. Kedzie Ave, Chicago, IL 60651.

**ANSWER:    The allegations contained in paragraph 11 are not directed to these Defendants.  Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 11 of the Complaint, and therefore deny same.**

12.    Defendant MARKET FRESH NORTH, INC. D/B/A MARKET FRESH FOODS ("North," and together with James Casaccio, Tom Casaccio, Leamington, Roosevelt, Brothers, and Market Fresh, the "Defendants") is an Illinois Corporation with its principal place of business at 6209 W. North Ave., Oak Park, IL 60302. Market Fresh North may be served with process through its registered agent, Gary W. Seyring, at 1051 Perimeter Dr., Suite 400, Schaumburg, IL 60173.

**ANSWER:    The allegations contained in paragraph 12 are not directed to these Defendants.  Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 12 of the Complaint, and therefore deny same.**

## BACKGROUND

### A. CGI'S COOPERATIVE PROGRAM

13.     CGI was a Chicago-based grocery cooperative with hundreds of members who operated grocery stores located in Illinois, Indiana, Iowa, Michigan, and Wisconsin. Members joined CGI to participate in its purchasing, dividend, equity, and lending programs.

**ANSWER:     Defendants admit the allegations contained in paragraph 13.**

14.     Members were required to maintain "good standing" status to participate in CGI's programs.  The requirements for good standing, along with the other rights and duties of membership, were set out in CGI's membership agreement (the "Membership Agreement"), its Amended and Restated By-Laws (effective November 2012) (the "By-Laws"), the Rules and Regulations (effective March 2013) (the "Rules & Regulations"), its Amended and Restated Articles of Incorporation (as amended 2015) (the "Articles"), and its Member Loan Policy and Procedure (effective January 2010) (the "Loan Policy"). Each member signed the Membership Agreement, thereby agreeing to comply with the By-Laws, the Rules & Regulations, the Articles, and the Loan Policy.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 14 of the Complaint, and therefore deny same.**

### 1. The Purchasing Program

15.     Members in good standing were eligible to participate in CGI's purchasing program. Members received goods from CGI on account, and CGI received payment through automated clearing house ("ACH") transactions drawn from the member's bank account (the "Purchasing Arrangement"). Members were required to maintain deposit accounts ("Purchase Deposits") with CGI at amounts tied to their weekly buying volume. See Ex. A at 4; Ex. B at 27-28; Ex. C § 5. If a member failed to maintain an ACH account or failed to maintain appropriate Purchase Deposits, that member was deemed to be in violation of By-Laws and was no longer in good standing. See Ex. B at 28-29; Ex. C § 3. A member also lost its good standing status if payment to CGI was not made within the 12-day payment term. See Ex. B at 28-29; Ex. C §§ 3(d), 6.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 15 of the Complaint, and therefore deny same.**

16.     To terminate purchasing from CGI, members were required to adhere to the procedure outlined in the By-Laws: a member either had to sell or close all its retail locations concurrently with termination or terminate at fiscal year-end and provide 60 days' written notice to CGI (the "Termination Procedure"). See Ex. B at 28. If a member failed to comply with the Termination Procedure or violated any other provision of the By-Laws, that member was no longer

in good standing, and that member forfeited any amount otherwise owed by CGI to such member. *See id*. at 25, 28, 29.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 16 of the Complaint, and therefore deny same.**

## 2.  The Patronage Dividend Program

17.    Members in good standing were also eligible to participate in CGI's patronage dividend program, which was governed by the By-Laws and the Rules & Regulations. At the close of each fiscal year, CGI's board of directors (the "Board") determined how much of CGI's profit to retain for costs, debt service, and any other reason deemed to be in the best interests of CGI. See Ex. B at 25, 27. The remaining profit, if any, was then distributed to members as a patronage dividend. If a member failed to maintain good standing or adhere to any provision of the By-Laws, including the Termination Procedure, it forfeited all rights to patronage dividends. *See* Ex. B at 25, 29.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 17 of the Complaint, and therefore deny same.**

18.    Members received their share of a patronage dividend either as a distribution of cash, stock, and credit at the end of the fiscal year, or as quarterly cash payments made in advance of the anticipated year-end dividend, with a final distribution of the balance as cash, stock, and credit at the end of the fiscal year.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 18 of the Complaint, and therefore deny same.**

19.    On or about September 15, 2016, the Board authorized a $44.5 million patronage dividend, subject to final adjustments, for the fiscal year ending July 30, 2016 (the "2016 Patronage Dividend"). None of CGI's governing documents, nor any other agreement, required CGI to pay the 2016 Patronage Dividend or any portion thereof. As noted above, the Board had broad discretion under the By-Laws to retain some or all of CGI's profits for costs, debt service, and any other reason deemed to be in CGI's best interests. In fact, when the Board authorized the 2016 Patronage Dividend, CGI was insolvent and had been since at least January 2016.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 19 of the Complaint, and therefore deny same.**

20.    Shortly after authorizing the 2016 Patronage Dividend, the Board learned that CGI had violated the liquidity covenants in its $150 million credit facility. In turn, CGI's lenders demanded—as a condition for not declaring a default on the credit facility—that CGI defer paying

30% of the 2016 Patronage Dividend until CGI achieved compliance with such liquidity covenants (the "Deferred Dividend").

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 20 of the Complaint, and therefore deny same.**

21.    On or about October 13, 2016, the Board authorized the Deferred Dividend, thereby amending the 2016 Patronage Dividend so that CGI had no obligation to pay the Deferred Dividend until the company was able to make such payment without violating its liquidity covenants. CGI subsequently sent letters to its members, explaining that the Deferred Dividend had been approved and that 30% of each member's 2016 Patronage Dividend would be recorded solely for bookkeeping purposes in the member's deposit account. CGI's financial condition never recovered such that it could pay the Deferred Dividend and comply with the liquidity covenants.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 21 of the Complaint, and therefore deny same.**

### 3. The Allowance Dividend Program

22.    Members also profited from CGI's participation in allowance programs with its vendors. CGI entered into contracts with its vendors whereby it would commit to purchase a certain amount of product and in return the vendor would provide CGI a rebate—called an allowance—on its purchases.

**ANSWER:    Defendants admit the allegations contained in paragraph 22.**

23.    On October 27, 2016, while insolvent, CGI paid its members over $2,500,000 in dividends from profit it earned on vendor allowance programs (the "2016 Allowance Dividend"). None of CGI's governing documents, nor any other agreement, required CGI to pay the 2016 Allowance Dividend.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 23 of the Complaint, and therefore deny same.**

### 4. The Equity Program

24.    Members in good standing were further eligible to participate in CGI's equity program. CGI had Class A voting stock and Class B non-voting stock. Upon joining CGI, every member was required to purchase five Class A shares at $100 par value, and the value of Class A shares always remained $100 per share. See Ex. D at 2-3; Ex. B at 6. The value of Class B shares was determined based on an annual valuation of CGI. See Ex. B at 2, 9. Members purchased Class B shares through CGI's stock option program or received such shares as a component of their patronage dividend. *See* Ex. B at 15-16, 26.

**ANSWER:     Defendants admit the allegations contained in paragraph 24.**

25.     Certain members received Class B shares as a component of their 2016 Patronage Dividend and then immediately requested that CGI redeem those shares.  On or about November 17, 2016, while insolvent, CGI issued redemption checks to requesting members (the "Redemption Payment") in order to redeem Class B shares received as a component of their 2016 Patronage Dividend. CGI had no obligation to redeem the Class B shares through the Redemption Payment.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 25 of the Complaint, and therefore deny same.**

### 5.  The Lending Program

26.     Finally, members in good standing were eligible to participate in CGI's member loan program. On or about October 15, 2014, CGI loaned $500,000.00 to North and in return the North executed a promissory note for $500,000.00 in favor of CGI (the "Note").  In connection with the Note, CGI also received the following related documents: (a) board resolution from North authorizing the loan; (b) security agreement from North; (c) cross-collateralization agreement from Market Fresh; (d) cross-default agreement from North and Market Fresh; (e) board resolution from Market Fresh authorizing its obligations; (f) hypothecation agreement; (g) business purpose affidavit from James Casaccio; (h) business purpose affidavit from Tom Casaccio; (i) personal guaranty of James Casaccio; (j) personal guaranty of Tom Casaccio; (k) indemnity agreement from North; (l) indemnity agreement from James Casaccio; (m) indemnity agreement  from  Tom Casaccio;  and  (n) mortgage  (together  with  the Note, the "Loan Documents").

**ANSWER:     The  allegations  contained  in  paragraph  26  are  not  directed  to  these**

**Defendants.  Defendants lack sufficient information to either admit or deny the allegations**

**contained in paragraph 26 of the Complaint, and therefore deny same.**

27.     Under the Note, North was required to make installment payments of principal and interest to CGI until the principal amount was paid in full. A missed payment resulted in default. *See* Ex. F-1 at 3; Ex. E § III(5).

**ANSWER:     The  allegations  contained  in  paragraph  27  are  not  directed  to  these**

**Defendants.  Defendants lack sufficient information to either admit or deny the allegations**

**contained in paragraph 27 of the Complaint, and therefore deny same.**

28.     In the event of default, the Loan Documents provided CGI recourse. For example, CGI had the right to charge late fees and default interest. See Ex. F-1 at 3; Ex. E § III(5). CGI was

also entitled to accelerate the Note and declare all outstanding interest, penalties, and principal immediately due. The Note provided for the following procedure related to acceleration (the "Acceleration Procedure"):

> Notice of Default. If Borrower is in default, Lender may send Borrower a written notice telling Borrower that if Borrower does not pay the overdue amount by a certain date, Lender may accelerate this Note and require Borrower to pay immediately the full amount of principal which has not been paid and all the interest that Borrower owes on that amount. Such date must be five (5) days after the date on which the notice is delivered or mailed to Borrower.

Ex. F-1 at 3.

In addition to default for missed payments, if North failed to maintain good standing, CGI was entitled to, among other things, charge default interest and late fees, sue on the Note and the guaranties, and foreclose on any collateral. See Ex. E § III(5), (10).

**ANSWER:    The allegations contained in paragraph 28 are not directed to these Defendants.  Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 28 of the Complaint, and therefore deny same.**

## B. DEFENDANTS' PARTICIPATION IN CGI'S COOPERATIVE PROGRAM

29.    Defendants executed the Membership Agreements, thereby becoming bound by those agreements, the By-Laws, the Rules & Regulations, the Articles, and the Loan Policy. Defendants never resigned their CGI membership prior to the Petition Date.

**ANSWER:    Defendants deny the allegations contained in paragraph 29.**

### 1.  Receipt of and Failure to Pay for Goods

30.    As of the Petition Date, Defendants had received, but had not paid for, goods on account from CGI in the amount of $286,037.72 (the "Unpaid Receivable") and had $100,000.00 in their Purchase Deposit accounts. Defendants received and accepted the goods but cancelled their ACH accounts before CGI could draw payment. Defendants then terminated purchasing from CGI by April 24, 2017, without adhering to the Termination Procedure.

**ANSWER:    Defendants deny the allegations contained in paragraph 30.**

31.    Defendants' failure to remit payment for the Unpaid Receivable, failure to maintain an ACH account, and failure to terminate purchasing in accordance with the Termination Procedure constitute material breaches of the Purchasing Arrangement, the Membership Agreement, the By-Laws, and the Rules & Regulations.

**ANSWER:**    **Defendants deny the allegations contained in paragraph 31.**

32.    Accordingly, Defendants (a) owe the Unpaid Receivable to CGI, (b) are no longer in good standing with CGI, (c) lost all rights to Patronage Dividends, and (d) forfeited any other amount owed to them by CGI.

**ANSWER:**    **Defendants deny the allegations and legal conclusions contained in paragraph 32.**

### 2.  Receipt of Avoidable Transfers

33.    CGI transferred $137,822.10 of the 2016 Patronage Dividend (the "Patronage Dividend Transfers") to Defendants Leamington, Roosevelt, Brothers, Market Fresh, and North (the "Avoidance Defendants") as indicated on the Patronage Dividend Transfer Schedule attached as Exhibit G-1.

**ANSWER:**    **Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 33 of the Complaint, and therefore deny same.**

34.    CGI transferred $18,949.19 of the 2016 Allowance Dividend to the Avoidance Defendants (the "Allowance Dividend Transfer") as indicated on the Allowance Dividend Transfer Schedule attached as Exhibit G-2.

**ANSWER:**    **Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 34 of the Complaint, and therefore deny same.**

35.    CGI made a $9,048.00 transfer to the Avoidance Defendants as Redemption Payments as indicated on the Redemption Payment Schedule attached as Exhibit G-3.

**ANSWER:**    **Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 35 of the Complaint, and therefore deny same.**

36.    CGI transferred $149,560.00 to the Avoidance Defendants to reduce their Purchase Deposit accounts (the "Purchase Deposit Transfers") as indicated on the Purchase Deposit Transfer Schedule attached as Exhibit G-4. The Purchase Deposit Transfers represented a return of cash or other consideration the Avoidance Defendants had contributed toward their Purchase Deposits.

**ANSWER:**    **Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 36 of the Complaint, and therefore deny same.**

### 3.  Breach of Promissory Note

37.     North ceased making any payments on the Note as of May 17, 2017, and therefore is in default under the Note.

**ANSWER:   The allegations contained in paragraph 37 are not directed to these Defendants.  Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 37 of the Complaint, and therefore deny same.**

38.     On or about May 31, 2018, in accordance with the Acceleration Procedure, the Trustee sent demand letters to Defendants (the "Demand Letters"), notifying Defendants of the default and demanding payment of the overdue amount on the Note.  The Trustee also demanded payment for the Unpaid Receivable, the Patronage Dividend Transfers, the Redemption Payments, and the Purchase Deposit Transfers. Defendants did not respond to the Demand Letter and did not remit payment to the Trustee.

**ANSWER:   The allegations contained in paragraph 38 are not directed to these Defendants.  Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 38 of the Complaint, and therefore deny same.**

39.     On or about June 5, 2018, the Trustee accelerated the Note. Accordingly, all outstanding principal ($362,000.00), interest ($24,507.06), and penalties ($40,305.36) under the Note are immediately due and payable by North in the aggregate amount of $426,812.42 (the "Note Obligation").

**ANSWER:   The allegations contained in paragraph 39 are not directed to these Defendants.  Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 39 of the Complaint, and therefore deny same.**

### C.  CGI'S INSOLVENCY

40.     CGI was insolvent at the time of the 2016 Patronage Dividend, and at the time of each of the Patronage Dividend Transfers, Allowance Dividend Transfers, and Purchase Deposit Transfers described above.

**ANSWER:   Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 40 of the Complaint, and therefore deny same.**

41.     CGI  suffered declining financial performance throughout 2015, 2016, and 2017. Although it did not file for bankruptcy until May 2017, CGI was doomed to fail long before then. A primary driver behind CGI's collapse was the declining condition of SVT—CGI's retail grocery subsidiary and largest customer. A decline in SVT's performance affected CGI in several important ways. It reduced the cash flow from SVT, reducing CGI's ability to pay its debts as they came due. It reduced the value of CGI's Class B stock, thereby reducing the incentive for grocery retailers to become or remain Members.  And it reduced the amount of product that SVT purchased from CGI, thereby reducing the amount of product that CGI purchased from its vendors, which diminished CGI's buying power and made CGI less attractive to grocery retailers.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 41 of the Complaint, and therefore deny same.**

42.     CGI's declining performance quickly became evident in its reported financial numbers. As to its income statement, CGI suffered a net loss of over $49 million for the fiscal year ending July 30, 2016. As to its balance sheet, CGI recognized a $28 million impairment charge against goodwill and a $39 million impairment charge against fixed assets for fiscal year 2016. The causes of the deterioration in CGI's financial condition that led to these year-end impairment charges were also present in early 2016.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 42 of the Complaint, and therefore deny same.**

43.     Even with these impairments to its assets, CGI's balance sheet still overstated the company's financial condition from a fair market perspective. Given the likelihood that CGI would soon fail, certain contingent liabilities should have been recognized on the company's consolidated balance sheet in 2016, including a significant portion of the following liabilities: (a) approximately $95 million in unfunded pension withdrawal liability; and (b) approximately $120 million in lease liabilities. In addition to its liabilities being understated, certain of CGI's assets were overstated on its balance sheet. CGI's distribution center, for instance, was carried on its balance sheet at $89 million throughout 2016 but sold for only $61 million in July 2017.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 43 of the Complaint, and therefore deny same.**

44.     The marketplace confirmed that CGI's assets were worth less than its liabilities long before CGI filed for bankruptcy. From August 2015 to April 2016, with the help of an experienced financial advisor, CGI marketed itself for a potential sale or merger, but failed to attract a viable offer that would pay off CGI's debts and return a profit to its shareholders. The Board should have pursued any transaction it could have achieved to reduce the ultimate loss to creditors, but the market itself had demonstrated that CGI's assets were worth less than its liabilities. When CGI abandoned these sale or merger efforts in April 2016, one Board member candidly expressed concern about CGI's survival, asking: "Is this Company beyond repair?"

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 44 of the Complaint, and therefore deny same.**

45.     CGI's lenders shared these concerns. During a September 2016 meeting with the company's management, CGI's lenders expressed "great concern as to the direction of the Company." Moreover, as discussed above, shortly after the Board authorized the 2016 Patronage Dividend in September 2016, CGI's lenders forced CGI to defer paying 30% of the dividend because paying the full 2016 Patronage Dividend put CGI in violation of its liquidity covenants.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 45 of the Complaint, and therefore deny same.**

<u>**CAUSES OF ACTION**</u>
**COUNT ONE**
**Turnover of Property**
**Pursuant to 11 U.S.C. § 542(b) – Unpaid Receivable**
**(Against All Defendants)**

46.     The Trustee re-alleges the allegations set forth in the above paragraphs.

**ANSWER:     Defendants restate their answers to the above paragraphs as for their answer**

**to paragraph 46, as if fully set forth herein.**

47.     Defendants received goods on account from CGI in the amount of the Unpaid Receivable.

**ANSWER:     Defendants deny the allegations contained in paragraph 47.**

48.     Defendants did not remit payment to CGI for the Unpaid Receivable.

**ANSWER:     Defendants deny the allegations contained in paragraph 48.**

49.     CGI's bankruptcy estate (the "CGI Estate") is entitled to payment of the Unpaid Receivable plus costs, expenses, and statutory interest under 815 Ill. Comp. Stat. Ann. 205/2.

**ANSWER:     Defendants deny the allegations contained in paragraph 49.**

50.     Defendants are in possession, custody, and/or control of the Unpaid Receivable.

**ANSWER:     Defendants deny the allegations contained in paragraph 50.**

51.     The Unpaid Receivable constitutes a matured, payable on demand, valid and existing debt, due and owing by the Defendants to the CGI Estate.

**ANSWER:     Defendants deny the allegations contained in paragraph 51.**

52.     The Unpaid Receivable is property of the CGI Estate under 11 U.S.C. § 541(a), and thus subject to turnover pursuant to 11 U.S.C. § 542(b).

**ANSWER:     Defendants deny the allegations contained in paragraph 52.**

53.     Accordingly, the Trustee seeks turnover of the Unpaid Receivable. In addition, pursuant to Article XV of the By-Laws and Section 13 of the Rules & Regulations, the Trustee seeks to recover reasonable attorney's fees, court costs, and all other expenses and costs incurred in recovering the Unpaid Receivable.

**ANSWER:     Defendants deny the allegations contained in paragraph 53.**

<u>**COUNT TWO**</u>
**Breach of Contract**
**(Against All Defendants)**

54.     Pleading in the alternative to Count One, the Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:     Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 54, as if fully set forth herein.**

55.     The Purchasing Arrangement is a valid and enforceable contract governed by the course of dealing between the parties, the By-Laws, and the Rules & Regulations.

**ANSWER:     Defendants deny the allegations contained in paragraph 55.**

56.     Pursuant to the Purchasing Arrangement, Defendants received goods on account from CGI in the amount of the Unpaid Receivable.

**ANSWER:     Defendants deny the allegations contained in paragraph 56.**

57.     CGI fully performed its obligations under the Purchasing Arrangement.

**ANSWER:     Defendants deny the allegations contained in paragraph 57.**

58.     Defendants did not maintain an open ACH account to satisfy all amounts owed to CGI for goods purchased on account, and Defendants otherwise failed to remit payment.

**ANSWER:     Defendants deny the allegations contained in paragraph 58.**

59.    The Trustee sent Defendants the Demand Letter.

**ANSWER:    Defendants admit the allegations contained in paragraph 59.**

60.    Defendants failed to pay the Unpaid Receivable and thus materially breached the Purchasing Arrangement, the By-Laws, and the Rules & Regulations.

**ANSWER:    Defendants deny the allegations and legal conclusions contained in paragraph 60.**

61.    The CGI Estate is entitled to payment of the Unpaid Receivable.

**ANSWER:    Defendants deny the allegations and legal conclusions contained in paragraph 61.**

62.    As a result of their breach, Defendants have caused CGI to incur damages in an amount equal to, at least, the Unpaid Receivable plus costs, expenses, and statutory interest under 815 Ill. Comp. Stat. Ann. 205/2.

**ANSWER:    Defendants deny the allegations and legal conclusions contained in paragraph 62.**

63.    Accordingly, the Trustee seeks to recover these damages. In addition, pursuant to Section XV of the By-Laws and Section 13 of the Rules & Regulations, the Trustee seeks to recover reasonable attorney's fees, court costs, and all other expenses and costs incurred recovering the Unpaid Receivable.

**ANSWER:    Defendants deny the allegations contained in paragraph 63.**

## COUNT THREE
**Avoidance of Fraudulent Obligations**
**Pursuant to 11 U.S.C. § 548(a)(1)(B) – 2016 Patronage Dividend**
**(Against Avoidance Defendants)**

64.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 64, as if fully set forth herein.**

65.    On or within two years before the Petition Date, CGI authorized the 2016 Patronage Dividend.

**ANSWER:** **Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 65 of the Complaint, and therefore deny same.**

66.    The 2016 Patronage Dividend constitutes an obligation incurred by CGI.

**ANSWER:** **Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 66 of the Complaint, and therefore deny same.**

67.    CGI incurred this obligation for the benefit of the Avoidance Defendants.

**ANSWER:** **Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 67 of the Complaint, and therefore deny same.**

68.    CGI received less than reasonably equivalent value in exchange for incurring this obligation.

**ANSWER:** **Defendants deny the allegations contained in paragraph 68.**

69.    CGI was insolvent at the time of or as a result of incurring this obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time that CGI incurred this obligation.

**ANSWER:** **Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 65 of the Complaint, and therefore deny same.**

70.    Accordingly, the Trustee seeks to avoid the 2016 Patronage Dividend obligation pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:** **Defendants deny that the Trustee is entitled to avoid the 2016 Patronage Dividend.**

**COUNT FOUR**
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 548(a)(1)(B) – Patronage Dividend Transfers**
**(Against Avoidance Defendants)**

71.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:** **Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 71, as if fully set forth herein.**

72.    On or within two years before the Petition Date, CGI transferred the Patronage
Dividend Transfers the Avoidance Defendants.

**ANSWER:** **Defendants deny the allegations contained in paragraph 72.**

73.    The Patronage Dividend Transfers constitute transfers of an interest in CGI's
property.

**ANSWER:** **Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 73, and therefore deny same.**

74.    The Patronage Dividend Transfers were made to or for the benefit of the Avoidance
Defendants.

**ANSWER:** **Defendants deny the allegations contained in paragraph 74.**

75.    CGI received less than reasonably equivalent value in exchange for the Patronage
Dividend Transfers.

**ANSWER:** **Defendants deny the allegations contained in paragraph 75.**

76.    CGI was insolvent at the time of or as a result of the Patronage Dividend Transfers.
CGI also was engaged in a business or transaction, or was about to engage in a business or
transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or
believed that it would incur, debts that were beyond its ability to pay as such debts matured at the
time that CGI made the Patronage Dividend Transfers.

**ANSWER:** **Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 76, and therefore deny same.**

77.    Accordingly, the Trustee seeks to avoid the Patronage Dividend Transfers
pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:** **Defendants deny that the Trustee is entitled to avoid the Patronage Dividend.**

## COUNT FIVE
**Avoidance of Fraudulent Obligations**
**Pursuant to 11 U.S.C. § 548(a)(1)(B) – Allowance Dividend Transfers**
**(Against Avoidance Defendants)**

78.     The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:     Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 78, as if fully set forth herein.**

79.     CGI had no obligation to make the Allowance Dividend Transfers.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 79 of the Complaint, and therefore deny same.**

80.     If, however, CGI had an obligation to make the Allowance Dividend Transfers, that
obligation was incurred on or within two years before the Petition Date.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 80 of the Complaint, and therefore deny same.**

81.     If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI did
so for the benefit of the Avoidance Defendants.

**ANSWER:     Defendants deny the allegations contained in paragraph 81.**

82.     If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI
received less than reasonably equivalent value in exchange for doing so.

**ANSWER:     Defendants deny the allegations contained in paragraph 82.**

83.     If CGI had an obligation to make the Allowance Dividend Transfers, CGI was
insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a
business or transaction, or was about to engage in a business or transaction, for which CGI had
unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts
that were beyond its ability to pay as such debts matured at the time of incurring any obligation to
make the Allowance Dividend Transfers.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 83 of the Complaint, and therefore deny same.**

84.     Accordingly, to the extent that CGI incurred any obligation to make the Allowance Dividend Transfers, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:     Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

**COUNT SIX**
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 548(a)(1)(B) – Allowance Dividend Transfers**
**(Against Avoidance Defendants)**

85.     The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:     Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 85, as if fully set forth herein.**

86.     On or within two years before the Petition Date, CGI made the Allowance Dividend Transfers to the Avoidance Defendants.

**ANSWER:     Defendants deny the allegations contained in paragraph 86.**

87.     The Allowance Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:     Defendants deny the allegations contained in paragraph 87.**

88.     The Allowance Dividend Transfers were made to or for the benefit of the Avoidance Defendants.

**ANSWER:     Defendants deny the allegations contained in paragraph 88.**

89.     CGI received less than reasonably equivalent value in exchange for the Allowance Dividend Transfers.

**ANSWER:     Defendants deny the allegations contained in paragraph 89.**

90.     CGI was insolvent at the time of or as a result of the Allowance Dividend Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time that CGI made the Allowance Dividend Transfers.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 90 of the Complaint, and therefore deny same.**

91.     Accordingly, the Trustee seeks to avoid the Allowance Dividend Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:     Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

### COUNT SEVEN
**Avoidance of Fraudulent Obligations
Pursuant to 11 U.S.C. § 548(a)(1)(B) – Redemption Payments
(Against Avoidance Defendants)**

92.     The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:     Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 92, as if fully set forth herein.**

93.     CGI had no obligation to make the Redemption Payments.

**ANSWER:     Defendants deny the allegations contained in paragraph 93.**

94.     If, however, CGI had an obligation to make the Redemption Payments, that obligation was incurred on or within two years before the Petition Date.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 94 of the Complaint, and therefore deny same.**

95.     If CGI incurred an obligation to make the Redemption Payments, CGI did so for the benefit of the Avoidance Defendants.

**ANSWER:     Defendants deny the allegations contained in paragraph 95.**

96.     If CGI incurred an obligation to make the Redemption Payments, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER:     Defendants deny the allegations contained in paragraph 96.**

97.     If CGI had an obligation to make the Redemption Payments, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Redemption Payments.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 97 of the Complaint, and therefore deny same.**

98.    Accordingly, to the extent that CGI incurred any obligation to make the Redemption Payments, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:    Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

<u>COUNT EIGHT</u>
**Avoidance of Fraudulent Transfers
Pursuant to 11 U.S.C. § 548(a)(1)(B) – Redemption Payments
(Against Avoidance Defendants)**

99.    The Trustee re-alleges the allegations set forth in the above paragraphs in paragraphs 1 through 45.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 99, as if fully set forth herein.**

100.    On or within two years before the Petition Date, CGI made the Redemption Payments to the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 100.**

101.    The Redemption Payments constitute transfers of an interest in CGI's property.

**ANSWER:    Defendants deny the allegations contained in paragraph 101.**

102.    The Redemption Payments were made to or for the benefit of the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 102.**

103.    CGI received less than reasonably equivalent value in exchange for the Redemption Payments.

**ANSWER:    Defendants deny the allegations contained in paragraph 103.**

104.    CGI was insolvent at the time of or as a result of the Redemption Payments. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Redemption Payments.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 104 of the Complaint, and therefore deny same.**

105.    Accordingly, the Trustee seeks to avoid the Redemption Payments pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:    Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

**COUNT NINE**
**Avoidance of Fraudulent Obligation**
**Pursuant to 11 U.S.C. § 548(a)(1)(B) – Purchase Deposit Transfers**
**(Against Avoidance Defendants)**

106.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 106, as if fully set forth herein.**

107.    CGI had no obligation to make the Purchase Deposit Transfers.

**ANSWER:    Defendants deny the allegations contained in paragraph 107.**

108.    If, however, CGI had an obligation to issue the Purchase Deposit Transfers, that obligation was incurred on or within two years before the Petition Date.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 108 of the Complaint, and therefore deny same.**

109.    If CGI incurred an obligation to issue the Purchase Deposit Transfers, CGI did so for the benefit of the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 109.**

110.    If CGI incurred an obligation to issue the Purchase Deposit Transfers, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER:    Defendants deny the allegations contained in paragraph 110.**

111.    If CGI had an obligation to make the Purchase Deposit Transfers, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts

that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Purchase Deposit Transfers.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 111 of the Complaint, and therefore deny same.**

112.    Accordingly, to the extent that CGI incurred any obligation to make the Purchase Deposit Transfers, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:    Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

<u>COUNT TEN</u>
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 548(a)(1)(B) – Purchase Deposit Transfers**
**(Against Avoidance Defendants)**

113.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 113, as if fully set forth herein.**

114.    On or within two years before the Petition Date, CGI made the Purchase Deposit Transfers to the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 114.**

115.    The Purchase Deposit Transfers constitute transfers of an interest in CGI's property.

**ANSWER:    Defendants deny the allegations contained in paragraph 115.**

116.    The Purchase Deposit Transfers were made to or for the benefit of Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 116.**

117.    CGI received less than reasonably equivalent value in exchange for the Purchase Deposit Transfers.

**ANSWER:    Defendants deny the allegations contained in paragraph 117.**

118.    CGI was insolvent at the time of or as a result of Purchase Deposit Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction,

for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Purchase Deposit Transfers.

**ANSWER:   Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 118 of the Complaint, and therefore deny same.**

119.   Accordingly, the Trustee seeks to avoid the Purchase Deposit Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**ANSWER:   Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

**COUNT ELEVEN**
**Avoidance of Preferential Transfers**
**Pursuant to 11 U.S.C. § 547(b) – Purchase Deposit Transfers**
**(Against Avoidance Defendants)**

120.   Pleading in the alternative to Count Ten, the Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:   Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 120, as if fully set forth herein.**

121.   Within 90 days before the Petition Date, CGI made the Purchase Deposit Transfers, or caused such transfers to be made, to the Avoidance Defendants.

**ANSWER:   Defendants deny the allegations contained in paragraph 121.**

122.   The Purchase Deposit Transfers constitute transfers of an interest in CGI's property.

**ANSWER:   Defendants deny the allegations contained in paragraph 122.**

123.   The Purchase Deposit Transfers were made to or for the benefit of the Avoidance Defendants, which were creditors of CGI.

**ANSWER:   Defendants deny the allegations contained in paragraph 123.**

124.   The Purchase Deposit Transfers were made for or on account of one or more antecedents debts owed by CGI to the Avoidance Defendants prior to the date on which such transfers were made.

**ANSWER:   Defendants deny the allegations contained in paragraph 124.**

125.   CGI was insolvent when the Purchase Deposit Transfers were made.

**ANSWER:   Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 125 of the Complaint, and therefore deny same.**

126.   The Purchase Deposit Transfers enabled the Avoidance Defendants to receive more than they would have received if: (a) such transfers had not been made; and (b) the Avoidance Defendants had received payment of the underlying debt pursuant to chapter 7 of the Bankruptcy Code.

**ANSWER:   Defendants deny the allegations contained in paragraph 126.**

127.   Accordingly, the Trustee seeks to avoid the Purchase Deposit Transfers pursuant to 11 U.S.C. § 547(b).

**ANSWER:   Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

## COUNT TWELVE
### Avoidance of Fraudulent Obligations
### Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 – 2016 Patronage Dividend
### (Against Avoidance Defendants)

128.   The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:   Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 128, as if fully set forth herein.**

129.   On or within four years before the Petition Date, CGI authorized the 2016 Patronage Dividend.

**ANSWER:   Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 129 of the Complaint, and therefore deny same.**

130.   The 2016 Patronage Dividend constitutes an obligation incurred by CGI.

**ANSWER:   Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 130 of the Complaint, and therefore deny same.**

131.   CGI incurred this obligation for the benefit of the Avoidance Defendants.

**ANSWER:   Defendants deny the allegations contained in paragraph 131.**

132.     CGI received less than reasonably equivalent value in exchange for incurring this obligation.

**ANSWER:     Defendants deny the allegations contained in paragraph 132.**

133.     CGI was insolvent at the time of or as a result of incurring this obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the 2016 Patronage Dividend.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 133 of the Complaint, and therefore deny same.**

134.     Accordingly, the Trustee seeks to avoid the 2016 Patronage Dividend obligation pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:     Defendants deny that the trustee is entitled to avoid any claimed transfers.**

**COUNT THIRTEEN**
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 – Patronage Dividend Transfers**
**(Against Avoidance Defendants)**

135.     The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:     Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 135, as if fully set forth herein.**

136.     On or within four years before the Petition Date, CGI transferred the Patronage Dividend Transfers to the Avoidance Defendants.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 136 of the Complaint, and therefore deny same.**

137.     The Patronage Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 137 of the Complaint, and therefore deny same.**

138.    The Patronage Dividend Transfers were made to or for the benefit of the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 138.**

139.    CGI received less than reasonably equivalent value in exchange for the Patronage Dividend Transfers.

**ANSWER:    Defendants deny the allegations contained in paragraph 139.**

140.    CGI was insolvent at the time of or as a result of Patronage Dividend Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Patronage Dividend Transfers.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 140 of the Complaint, and therefore deny same.**

141.    Accordingly, the Trustee seeks to avoid the Patronage Dividend Transfers pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:    Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

## COUNT FOURTEEN
### Avoidance of Fraudulent Obligations
### Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 – Allowance Dividend Transfers
### (Against Avoidance Defendants)

142.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 142, as if fully set forth herein.**

143.    CGI had no obligation to make the Allowance Dividend Transfers.

**ANSWER:    Defendants deny the allegations contained in paragraph 143.**

144.    If, however, CGI incurred an obligation to make the Allowance Dividend Transfers, that obligation was incurred within four years before the Petition Date.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 144 of the Complaint, and therefore deny same.**

145.    If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI did so for the benefit of the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 145.**

146.    If CGI incurred an obligation to make the Allowance Dividend Transfers, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER:    Defendants deny the allegations contained in paragraph 146.**

147.    If CGI had an obligation to make the Allowance Dividend Transfers, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Allowance Dividend Transfers.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 147 of the Complaint, and therefore deny same.**

148.    Accordingly, to the extent that CGI incurred any obligation to make the Allowance Dividend Transfers, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:    Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

### COUNT FIFTEEN
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 – Allowance Dividend Transfers**
**(Against Avoidance Defendants)**

149.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 149, as if fully set forth herein.**

150.    On or within before the Petition Date, CGI made the Allowance Dividend Transfers to the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 150.**

151.    The Allowance Dividend Transfers constitute transfers of an interest in CGI's property.

**ANSWER:   Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 151 of the Complaint, and therefore deny same.**

152.   The Allowance Dividend Transfers were made to or for the benefit of the Avoidance Defendants.

**ANSWER:   Defendants deny the allegations contained in paragraph 152.**

153.   CGI received less than reasonably equivalent value in exchange for the Allowance Dividend Transfers.

**ANSWER:   Defendants deny the allegations contained in paragraph 153.**

154.   CGI was insolvent at the time of or as a result of Allowance Dividend Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Allowance Dividend Transfers.

**ANSWER:   Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 154 of the Complaint, and therefore deny same.**

155.   Accordingly, the Trustee seeks to avoid the Allowance Dividend Transfers pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:   Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

## COUNT SIXTEEN
### Avoidance of Fraudulent Obligations
**Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 – Redemption Payments**
**(Against Avoidance Defendants)**

156.   The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:   Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 156, as if fully set forth herein.**

157.   CGI had no obligation to make the Redemption Payments.

**ANSWER:   Defendants deny the allegations contained in paragraph 157.**

158.   If, however, CGI incurred an obligation to make the Redemption Payments, CGI did so on or within four years before the Petition Date.

**ANSWER:** **Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 158 of the Complaint, and therefore deny same.**

159.    If CGI incurred an obligation to make the Redemption Payments, CGI did so for the benefit of the Avoidance Defendants.

**ANSWER:** **Defendants deny the allegations contained in paragraph 159.**

160.    If CGI incurred an obligation to make the Redemption Payments, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER:** **Defendants deny the allegations contained in paragraph 160.**

161.    If CGI had an obligation to make the Redemption Payments, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Redemption Payments.

**ANSWER:** **Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 161 of the Complaint, and therefore deny same.**

162.    Accordingly, to the extent that CGI incurred any obligation to make the Redemption Payments, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:** **Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

<u>**COUNT SEVENTEEN**</u>
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 – Redemption Payments**
**(Against Avoidance Defendants)**

163.    The Trustee re-alleges the allegations set forth in the above paragraphs in paragraphs 1 through 45.

**ANSWER:** **Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 163, as if fully set forth herein.**

164.    On or within four years before the Petition Date, CGI made the Redemption Payments to the Avoidance Defendants.

**ANSWER:**     **Defendants deny the allegations contained in paragraph 164.**

165.    The Redemption Payments constitute transfers of an interest in CGI's property.

**ANSWER:**     **Defendants deny the allegations contained in paragraph 165.**

166.    The Redemption Payments were made to or for the benefit of the Avoidance Defendants.

**ANSWER:**     **Defendants deny the allegations contained in paragraph 166.**

167.    CGI received less than reasonably equivalent value in exchange for the Redemption Payments.

**ANSWER:**     **Defendants deny the allegations contained in paragraph 167.**

168.    CGI was insolvent at the time of or as a result of Redemption Payments. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Redemption Payments.

**ANSWER:**     **Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 168 of the Complaint, and therefore deny same.**

169.    Accordingly, the Trustee seeks to avoid the Redemption Payments pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:**     **Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

**COUNT EIGHTEEN**
**Avoidance of Fraudulent Obligations**
**Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 – Purchase Deposit Transfers**
**(Against Avoidance Defendants)**

170.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:**     **Defendants restate their answers to paragraphs 1 through 45 as and for their**

**answer to paragraph 170, as if fully set forth herein.**

171.    CGI had no obligation to make the Purchase Deposit Transfers.

**ANSWER:**     **Defendants deny the allegations contained in paragraph 171.**

172.    If, however, CGI incurred an obligation to make the Purchase Deposit Transfers, CGI did so on or within four years before the Petition Date.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 172 of the Complaint, and therefore deny same.**

173.    If CGI incurred an obligation to make the Purchase Deposit Transfers, CGI did so for the benefit of the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 173.**

174.    If CGI incurred an obligation to make the Purchase Deposit Transfers, CGI received less than reasonably equivalent value in exchange for doing so.

**ANSWER:    Defendants deny the allegations contained in paragraph 174.**

175.    If CGI had an obligation to make the Purchase Deposit Transfers, CGI was insolvent at the time of or as a result of incurring that obligation. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of incurring any obligation to make the Purchase Deposit Transfers.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 175 of the Complaint, and therefore deny same.**

176.    Accordingly, to the extent that CGI incurred any obligation to make the Purchase Deposit Transfers, the Trustee seeks to avoid that obligation pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:    Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

<u>**COUNT NINETEEN**</u>
**Avoidance of Fraudulent Transfers**
**Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5 – Purchase Deposit Transfers**
**(Against Avoidance Defendants)**

177.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 177, as if fully set forth herein.**

178.    On or within four years before the Petition Date, CGI made the Purchase Deposit Transfers to the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 178.**

179.    The Purchase Deposit Transfers constitute transfers of an interest in CGI's property.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 179 of the Complaint, and therefore deny same.**

180.    The Purchase Deposit Transfers were made to or for the benefit of the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 180.**

181.    CGI received less than reasonably equivalent value in exchange for the Purchase Deposit Transfers.

**ANSWER:    Defendants deny the allegations contained in paragraph 181.**

182.    CGI was insolvent at the time of or as a result of Purchase Deposit Transfers. CGI also was engaged in a business or transaction, or was about to engage in a business or transaction, for which CGI had unreasonably small capital. CGI, moreover, intended to incur, or believed that it would incur, debts that were beyond its ability to pay as such debts matured at the time of the Purchase Deposit Transfers.

**ANSWER:    Defendants lack sufficient knowledge to either admit or deny the allegations**

**contained in paragraph 182 of the Complaint, and therefore deny same.**

183.    Accordingly, the Trustee seeks to avoid the Purchase Deposit Transfers pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/5(a)(2).

**ANSWER:    Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

## COUNT TWENTY
### Avoidance of Fraudulent Transfers
### Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/6 – Purchase Deposit Transfers
### (Against Avoidance Defendants)

184.    Pleading in the alternative to Count Nineteen, the Trustee re-alleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:     Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 184, as if fully set forth herein.**

185.    On or within four years before the Petition Date, CGI made the Purchase Deposit Transfers to the Avoidance Defendants.

**ANSWER:     Defendants deny the allegations contained in paragraph 185.**

186.    The Purchase Deposit Transfers constitute transfers of an interest in CGI's property.

**ANSWER:     Defendants deny the allegations contained in paragraph 186.**

187.    CGI received less than reasonably equivalent value in exchange for the Purchase Deposit Transfers.

**ANSWER:     Defendants deny the allegations contained in paragraph 187.**

188.    The Purchase Deposit Transfers were made to or for the benefit of the Avoidance Defendants, which were creditors of CGI.

**ANSWER:     Defendants deny the allegations contained in paragraph 188.**

189.    The Purchase Deposit Transfers were made for or on account of one or more antecedents debts owed by CGI to the Avoidance Defendants prior to the date on which such transfers were made.

**ANSWER:     Defendants deny the allegations and legal conclusions contained in paragraph 189.**

190.    CGI was insolvent when the Purchase Deposit Transfers were made.

**ANSWER:     Defendants lack sufficient knowledge to either admit or deny the allegations contained in paragraph 190 of the Complaint, and therefore deny same.**

191.     Accordingly, the Trustee seeks to avoid the Purchase Deposit Transfers pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. Ann. 160/6(a).

**ANSWER:     Defendants deny that the Trustee is entitled to avoid any claimed transfers.**

## COUNT TWENTY-ONE
### Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550(a)
### (Against Avoidance Defendants)

192.    The Trustee re-alleges the allegations set forth in paragraphs 1 through 191.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 192, as if fully set forth herein.**

193.    The Patronage Dividend Transfers, the Allowance Dividend Transfers, the Redemption Payments, and the Purchase Deposit Transfers are subject to avoidance pursuant to 11 U.S.C. §§ 544(b), 547(b), and 548(a)(1)(B).

**ANSWER:    Defendants deny the allegations and legal conclusions contained in paragraph 193.**

194.    The Avoidance  Defendants received the Patronage Dividend Transfers, the Allowance Dividend Transfers, the Redemption Payments, and the Purchase Deposit Transfers as the initial transferees.

**ANSWER:    Defendants deny the allegations contained in paragraph 194.**

195.    Accordingly, pursuant to 11 U.S.C. § 550(a)(1), the Trustee seeks to recover the value of the Patronage Dividend Transfers, the Allowance Dividend Transfers, the Redemption Payments, and the Purchase Deposit Transfers from the Avoidance Defendants.

**ANSWER:    Defendants deny the allegations contained in paragraph 195.**

## COUNT TWENTY-TWO
### Turnover of Property
### Pursuant to 11 U.S.C. § 542(b) – Promissory Note Debt
### (Against North)

### ANSWERS TO PARAGRAPHS 196 THROUGH 208 OF COUNT 22

Count 22 is not directed to Defendants, and as such, no answer is necessary.  Should any of the allegations contained in Count 22 be construed as directed to Defendants, Defendants deny the allegations.

## COUNT TWENTY-THREE
**Breach of Promissory Note**
**(Against North)**

### ANSWERS TO PARAGRAPHS 209 THROUGH 214 OF COUNT 23

Count 23 is not directed to Defendants, and as such, no answer is necessary. Should any of the allegations contained in Count 23 be construed as directed to Defendants, Defendants deny the allegations.

## COUNT TWENTY-FOUR
**Breach of Guaranty**
**(Against James Casaccio and Tom Casaccio)**

### ANSWERS TO PARAGRAPHS 215 THROUGH 222 OF COUNT 24

Count 24 is not directed to Defendants, and as such, no answer is necessary. Should any of the allegations contained in Count 24 be construed as directed to Defendants, Defendants deny the allegations.

## COUNT TWENTY-FIVE
**Claim for Indemnity**
**(Against North, James Casaccio, and Tom Casaccio)**

### ANSWERS TO PARAGRAPHS 223 THROUGH 226 OF COUNT 25

Count 25 is not directed to Defendants, and as such, no answer is necessary. Should any of the allegations contained in Count 25 be construed as directed to Defendants, Defendants deny the allegations.

## COUNT TWENTY-SIX
**Unjust Enrichment**
**(Against All Defendants)**

227.    Pleading in the alternative to Counts One through Twenty-Five, the Trustee realleges the allegations set forth in paragraphs 1 through 45.

**ANSWER:    Defendants restate their answers to paragraphs 1 through 45 as and for their answer to paragraph 227, as if fully set forth herein.**

228.    Defendants received benefits—at CGI's expense—in connection with the Purchasing Arrangement, the Loan Documents, and certain avoidable transfers. Specifically, Defendants received benefits associated with the Unpaid Receivable, the Patronage Dividend Transfers, the Allowance Dividend Transfers, the Redemption Payments, the Purchase Deposit Transfers, and the Note Obligation.

**ANSWER:    Defendants deny the allegations contained in paragraph 228.**

229.    Defendants have unjustly retained these benefits to CGI's detriment, even though the Trustee has attempted to recover these benefits through the Demand Letter.

**ANSWER:    Defendants deny the allegations contained in paragraph 229.**

230.    Retention of these benefits by Defendants violates fundamental principles of justice, equity, and good conscience.

**ANSWER:    Defendants deny the allegations contained in paragraph 230.**

231.    Accordingly, the Trustee seeks to recover the amount by which Defendants have been unjustly enriched.

**ANSWER:    Defendants deny the allegations contained in paragraph 231.**

## COUNT TWENTY-SEVEN
### Disallowance of Claims Pursuant to 11 U.S.C. § 502
### (Against All Defendants)

232.    The Trustee re-alleges the allegations set forth in the above paragraphs.

**ANSWER:    Defendants restate their answers to the paragraphs set forth above as and for their answer to paragraph 232, as if fully stated herein.**

233.    This count is asserted against Defendants to the extent that any claims have been filed by or scheduled on behalf of Defendants against the CGI Estate.

**ANSWER:    No allegation is contained in paragraph 233.    To the extent an answer is required, Defendants deny.**

234.    Defendants are persons or entities from which property is recoverable under 11 U.S.C. §§ 542 and 550 (the "Recoverable Property").

**ANSWER:    Defendants deny the allegations and legal conclusions contained in paragraph 234.**

235.    Defendants have not turned over the Recoverable Property to the CGI Estate.

**ANSWER:    Defendants deny that any property is required to be turned over to the CGI Estate, and therefore denies the allegations.**

236.    Accordingly, pursuant to 11 U.S.C. § 502(d), the Trustee hereby objects to and seeks disallowance of any claims by Defendants against the CGI Estate. Moreover, pursuant to 11 U.S.C. § 502(j), the Trustee seeks reconsideration and disallowance of any claims by Defendants against the CGI Estate to the extent that such claims have been allowed by this Court.

**ANSWER:    Defendants deny the allegations and legal conclusions contained in paragraph 236.**

## CONDITIONS PRECEDENT

237.    All conditions precedent to the Trustee's claims for relief have been performed or have occurred.

**ANSWER:    Defendants deny the allegations and legal conclusions contained in paragraph 237.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

To the extent that any of the payments complained of in the Complaint were received by Defendants, such payments did not enable the Defendants to receive more money than it would have received if the case were a case under Chapter 7 of the Bankruptcy Code and had the payments not been made.

### Second Affirmative Defense

To the extent that Defendants received any of the payments complained of in the Complaint, any such payment was intended by the Debtor and the Defendants to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the

Debtor and in fact was substantially contemporaneous exchange as set forth in 11 U.S.C. § 547(C)(1).

### Third Affirmative Defense

To the extent that Defendants received any of the payments complained of in the Complaint, any such payments were of debt incurred by the Debtor in the ordinary course of business and financial affairs of the Debtor and Defendants, were made in the ordinary course of financial affairs of the Debtor and Defendants and were made according to ordinary business terms thereby satisfying the ordinary course of business defense set forth in 11 U.S.C. § 547(C)(2).

### Fourth Affirmative Defense

To the extent that any of the payments complained of in the Complaint were received by Defendants, after such transfer Defendants gave new value to or for the benefit of the Debtor that was not secured by an otherwise unavoidable security interest and, on account of which new value, Defendants did not make an otherwise unavoidable transfer to or for its benefit of Defendants, thereby satisfying the new value defense under 11 U.S.C. § 547(C)(4).

### Fifth Affirmative Defense

Plaintiff's claims are barred, in whole or in party, by the doctrine of set off.

### Sixth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

### Seventh Affirmative Defense

Plaintiff's claim is barred, in whole or in part, by the doctrine of laches.

Defendants reserve the right to raise additional defenses and to amend and/or supplement those asserted herein upon further analysis and discovery of information.

Wherefore, Defendants LEAMINGTON FOODS, INC. and CASACCIO BROTHERS, INC. respectfully request this Honorable Court enter judgment in favor of Defendants and dismiss Plaintiff's Complaint and award attorney's fees and costs to the Defendants.  Defendants also request such other and further relief as this Court deems just.

Respectfully submitted,

LEAMINGTON FOODS, INC. and
CASACCIO BROTHERS, INC.

By:     /s/ John A. Lipinsky_____
One of their attorneys

John A. Lipinsky
Clingen Callow & McLean
2300 Cabot Drive, Suite 500
Lisle, Illinois 60532
(630) 871-2600
lipinsky@ccmlawyer.com